| | |
|---|---|
| | **UNITED STATES DISTRICT COURT** |
| | **CENTRAL DISTRICT OF CALIFORNIA** |
| | **EASTERN DIVISION** |

**JANIFFER D. CARMONA,**

        **Plaintiff,**

        v.

**NANCY A. BERRYHILL,**
**Acting Commissioner of the**
**Social Security Administration,**

        **Defendant.**

Case No. EDCV 16-01376 AJW

**MEMORANDUM OF DECISION**

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to the disputed issues.

**Administrative Proceedings**

The parties are familiar with the procedural facts, which are summarized in the Joint Stipulation. [See JS 2]. In a December 19, 2014 written hearing decision that constitutes the Commissioner's final decision, an administrative law judge ("ALJ") concluded that plaintiff was not disabled. [JS 2; Administrative Record ("AR") 46-58]. The ALJ determined that plaintiff suffered from the following severe impairments: diabetes mellitus; thyroid cancer, status post thyroidectomy; inflammatory arthritis; and major depressive disorder. [AR 48]. The ALJ also found that plaintiff had non-severe impairments

consisting of diabetes, atypical chest pain, and hypertension. [AR 18]. The ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform a range of light work with mental limitations restricting her to no more than simple, repetitive tasks involving only occasional contact with the general public, coworkers, or supervisors. [AR 50]. The ALJ found that plaintiff's RFC precluded performance of her past relevant work but did not preclude performance of alternative jobs that exist in significant numbers in the national economy. [AR 56-58].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Social Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

**Discussion**

**Medical opinion evidence**

Plaintiff contends that the ALJ failed properly to evaluate the medical opinion evidence regarding plaintiff's mental and physical impairments.

In general, "[t]he opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant." Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)); see Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001). A treating physician's opinion is entitled to greater weight than those of examining or non-examining physicians because "treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual . . . ." Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir.

2001) (quoting Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996) and citing Social Security Ruling ("SSR") 96-2p, 1996 WL 374188); see generally 20 C.F.R. §§ 404.1502, 404.1527(c), 416.902, 416.927(c). When a treating physician's medical opinion as to the nature and severity of an individual's impairment is well-supported and not inconsistent with other substantial evidence in the record, that opinion must be given controlling weight. Edlund, 253 F.3d at 1157; see Orn, 495 F.3d at 631; SSR 96-2p, 1996 WL 374188 at 1-2.

Even when not entitled to controlling weight, "treating source medical opinions are still entitled to deference and must be weighed" in light of (1) the length of the treatment relationship; (2) the frequency of examination; (3) the nature and extent of the treatment relationship; (4) the supportability of the diagnosis; (5) consistency with other evidence in the record; and (6) the area of specialization. Edlund, 253 F.3d at 1157 & n.6 (quoting SSR 96-2p and citing 20 C.F.R. § 404.1527).

If a treating source opinion is uncontroverted, the ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting it. If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan, 242 F.3d at 1148-1149; Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

**Dr. Ijeaku and Dr. Wali**

Plaintiff underwent a consultative psychiatric examination at the Commissioner's request in April 2013. Ijeoma Ijeaku, M.D. interviewed plaintiff and conducted a mental status examination. [AR 677-682]. Plaintiff, who appeared to be a "good and reliable historian," reported that her symptoms started when she was diagnosed with thyroid cancer and experienced post-surgical complications that caused "drastic changes to her life." [AR 678]. She reported seeking psychiatric care in March 2013 and receiving a referral to a psychiatrist. [AR 678]. Plaintiff endorsed symptoms of depressed mood, crying spells, feelings of hopelessness and helplessness, difficulty concentrating, memory problems, insomnia, low energy, lack of motivation, decreased appetite but recent weight gain, and anhedonia. Plaintiff denied suicidal ideation, auditory or visual hallucinations. Mental status examination revealed depressed mood, dysphoric and tearful affect, intact memory and concentration, limited understanding of abstractions, poor insight, and good judgment. Dr. Ijeaku diagnosed major depressive disorder without psychotic features, rule out depression

due to general medical conditions. [AR 681]. Dr. Ijeaku assessed moderate impairments in plaintiff's ability to understand, remember, and carry out complex instructions; perform activities within a schedule and maintain regular attendance; complete a normal workday or workweek without interruptions from psychiatric symptoms; and respond appropriately to changes in a work setting. He assessed "no impairment" in her ability to understand, remember, and carry out simple instructions and to maintain concentration, persistence, and pace. [AR 681]. Dr. Ijeaku gave plaintiff a Global Assessment of Functioning ("GAF") score of 60, signifying moderate symptoms or any moderate difficulty in social, occupational, or school functioning.[1] Dr. Ijeaku opined that plaintiff would benefit from "adequate psychiatric care" and "adequate management of medical issues" and described her prognosis as "guarded." [AR 681].

In August 2013, plaintiff presented to Upland Community Counseling ("UCC"), a San Bernardino County clinic, for a psychiatric evaluation on referral by her primary care physician. [AR 880-884]. Julie C. Myers, Ph.D. assessed plaintiff by interviewing her and conducting a mental status examination. Plaintiff reported that she experienced depressed mood, forgetfulness, poor concentration, racing thoughts, constant worrying, insomnia, decreased appetite, loss of interest in personal grooming, suicidal ideation about twice

---

[1] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." According to the DSM–IV, a GAF score between 41 and 50 describes "serious symptoms" or "any serious impairment in social, occupational, or school functioning." A GAF score between 51 to 60 describes "moderate symptoms" or any moderate difficulty in social, occupational, or school functioning." Although GAF scores, standing alone, do not control determinations of whether a person's mental impairments rise to the level of a disability (or interact with physical impairments to create a disability), they may be a useful measurement. We note, however, that GAF scores are typically assessed in controlled, clinical settings that may differ from work environments in important respects.

Garrison v. Colvin, 759 F.3d 995, 1003 n.4 (9th Cir. 2014) (quoting Vargas v. Lambert, 159 F.3d 1161, 1164 n. 2 (9th Cir.1998) and citing SSR 85–15, 1983–1991 Soc. Sec. Rep. Serv. 343 (S.S.A 1985) ("The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day.")).

4

a month, and auditory hallucinations. Plaintiff said that her symptoms began in September 2012, after she underwent surgery for thyroid cancer, and had worsened over the past three months. [AR 880, 882]. She reported that since her diagnosis she had lived rent-free, bartering for housing by assisting her housemate with her business by performing tasks such as filing and making copies. Plaintiff had no family or friends in California and was "very isolated." [AR 880]. Plaintiff was taking the anti-depressant fluoxetine (Prozac) recently prescribed by her primary care doctor. [AR 881]. Mental status examination findings included fair hygiene, "somber" and depressed mood; sad, blunted affect; depressed thought process; reports of memory problems and auditory hallucinations. Plaintiff's insight and judgment were good. [AR 883].

Dr. Myers diagnosed major depressive disorder, single episode, severe, with psychotic features. [AR 887]. She assessed a GAF score of 50, signifying serious symptoms or any serious impairment in social, occupational, or school functioning. [AR 887]. Dr. Myers referred plaintiff to a staff psychiatrist and provided her with information regarding group therapy and supportive services. [AR 883].

Plaintiff began treatment with Sushma Sachdev-Wali, M.D., a UCC psychiatrist, in October 2013.[2] [AR 885-886]. Plaintiff reported depressive symptoms to Dr. Wali that were similar to those she described to Dr. Myers. Plaintiff exhibited the follow abnormalities on mental status examination: withdrawn behavior; slow, soft speech; depressed mood and affect; auditory hallucinations; impaired immediate and recent memory; thought blocking; fair insight; and fair judgment. [AR 886]. Dr. Wali diagnosed major depressive disorder, single episode, with psychotic features. [AR 886-887]. She assessed a GAF score of 50. [AR 886]. Dr. Wali increased plaintiff's Prozac dosage and also prescribed trazodone, which is used to treat depression and also may be used to treat insomnia and schizophrenia.[3] [AR 888].

During medication management visits in November 2013 and January 2014, Dr. Wali noted that plaintiff's mood was "less depressed," and that her sleep had improved. Plaintiff's compliance with medication was "good." Plaintiff's diagnosis was unchanged. [AR 889-890]. Her Prozac and trazodone

---

[2] The ALJ and the parties refer to Dr. Sachdev-Wali as "Dr. Wali." For clarity, the Court refers to her by that name as well.

[3] See . U.S. Nat'l Library of Med. and Nat'l Inst. of Health, MedlinePlus website, trazodone, available at http://www.nlm.nih.gov/medlineplus/druginfo/meds/a681038.html#why (last visited Aug. 8, 2017).

dosages were both increased. [AR 888].

In March 2014, Dr. Wali completed a Mental Disorder Questionnaire Form containing narrative responses to a series of questions regarding plaintiff's clinical presentation, symptoms, history, current mental status, current functioning, medications, diagnosis, and prognosis. [AR 891-895]. Dr. Wali reported plaintiff's subjective symptoms, including depressed mood, difficulty sleeping, isolating herself in her room about half of the day, making mistakes while performing tasks for her housemate, needing reminders, lack of energy, forgetfulness, trouble concentrating and staying on task, difficulty and delay in completing chores, decreased energy, and anhedonia. [AR 893-894]. Mental status examination findings included lethargic and depressed mood, tearfulness, and impaired delayed recall. Plaintiff was taking Prozac and trazodone. She said that her psychiatric medications had reduced her mood swings. Plaintiff's diagnosis remained the same, and her prognosis was "guarded." Dr. Wali recommended that plaintiff continue to receive mental health services and opined that plaintiff was not competent to manage funds on her own behalf. [AR 894].

In August 2014, Dr. Wali completed a Mental Impairment Questionnaire stating that she had seeing plaintiff every four to eight weeks for about a year. [AR 1021-1025]. Dr. Wali gave plaintiff a diagnosis of major depressive disorder, severe, with psychotic features, and assigned her a GAF score of 50, signifying serious symptoms or any serious impairment in social, occupational, or school functioning. In addition to Prozac and trazodone, Dr. Wali had prescribed Risperdal (risperidone), which is used to treat symptoms of schizophrenia.[4] In response to questions on the form, Dr. Wali indicated as follows. Plaintiff was not a malingerer, and her condition was expected to last at least 12 months. [AR 1021]. Her signs and symptoms consisted of depressed mood, blunt affect, suicidal ideation without past attempts, difficulty thinking or concentrating, poor immediate memory, appetite disturbance, weight gain, decreased energy, abnormal (slowed) speech, social withdrawal or isolation, auditory hallucinations, and decreased need for sleep. Of these, her depression, insomnia, auditory hallucinations, and withdrawal were "most frequent or severe." [AR 1022-1023]. Asked whether plaintiff experienced episodes of decompensation or deterioration

---

[4] See U.S. Nat'l Library of Medicine and Nat'l Instit. of Health, MedlinePlus website, risperidone, available at http://www.nlm.nih.gov/medlineplus/druginfo/meds/a694015.html (last visited Aug. 9, 2017).

in a work or work-like setting which caused her to withdraw from the situation and/or experience an exacerbation of symptoms, Dr. Wali answered, "yes," and explained that plaintiff was "unable to manage stress [and ] becomes easily agitated." [AR 1023]. Dr. Wali assessed plaintiff with "moderate-to-marked" or "marked"[5] limitations in all of the work-related functional abilities listed and opined that plaintiff would be absent from work more than three times per month as a result of her impairments or treatment. [AR 1024].

In restricting plaintiff to no more than simple, repetitive tasks involving only occasional contact with the general public, coworkers, or supervisors, the ALJ said that he gave "significant weight" to Dr. Ijeaku's examining source opinion "because it is consistent with the medical evidence," and "little weight to Dr. Wali's opinion because it is inconsistent with the substantial evidence, including the claimant's activities of daily living." [AR 52].

The ALJ's rationale for his rejection of Dr. Wali's opinion is legally insufficient. Saying that a medical opinion is "inconsistent with the substantial evidence" is not a specific reason for rejecting the opinion; it is nothing more than boilerplate. The ALJ identified only one specific inconsistency, the purported conflict between Dr. Wali's opinion and plaintiff's daily activities. An inconsistency between treating physician's opinion and a claimant's daily activities can be a specific, legitimate reason for rejecting a treating physician's opinion, but "this principle has no application [where] a holistic review of the record does not reveal an inconsistency between the treating providers' opinions and [the claimant's] daily activities." Ghanim v. Colvin, 763 F.3d 1154, 1162 (9th Cir. 2014). Here, the ALJ did not specify which of plaintiff's daily activities ostensibly were inconsistent with Dr. Wali's opinion. See Regennitter v. Comm'r of the Soc. Sec. Admin., 166 F.3d 1294, 1298-1299 (9th Cir. 1999) ("[C]onclusory reasons will not justify an ALJ's rejection of a medical opinion. . . . .The ALJ must do more than offer his own conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.") (internal quotation marks omitted). Elsewhere in his decision, the ALJ described plaintiff's daily

---

[5] "Moderate-to-marked" is defined in the questionnaire as "[s]ymptoms frequently interfere with ability," meaning from 1/3 to 2/3 of an eight-hour workday, while "marked" is defined as "[s]ymptoms constantly interfere with ability," meaning more than 2/3 of an eight-hour workday. [AR 1024].

7

activities as performing personal grooming without assistance, managing her personal funds, caring for her pets, doing laundry, shopping for groceries, and helping her housemate by filling out invoices. [AR 49, 54-55].

During the September 2014 hearing, plaintiff testified that she had no income and received food stamps. She lived with her friend and her friend's daughter. [AR 71]. She was able manage her personal grooming, but she was dependent on her housemates for help with household chores. [AR 80]. Plaintiff helped her friend for "an hour or two" by filling out invoices, usually on Wednesdays and Thursdays. [AR 71-72, 79]. Plaintiff said that she made "a lot of mistakes" in filling out the invoices. [AR 72, 85]. Plaintiff had a driver's license but testified that she no longer drove because she did not feel safe doing so due to dizziness and lack of concentration. [AR 72, 83].

"[A] holistic review of the record does not reveal an inconsistency" between Dr. Wali's opinion and plaintiff's daily activities that is sufficient, standing alone, to justify rejecting the treating psychiatrist's opinion. Ghanim, 763 F.3d at 1162 (holding that no material inconsistency between the treating physician's opinion and the claimant's daily activities existed where the claimant "performed some basic chores and occasionally socialized" but "relied heavily on his caretaker, struggled with social interactions, and limited himself to low-stress environments"); cf. Vasquez v. Astrue, 572 F.3d 586, 591-592 (9th Cir. 2009) (holding that the ALJ's "vague allegation" that the claimant's subjective complaints were "not consistent with the objective medical evidence" was not a "specific" reason supporting an adverse credibility determination). The ALJ articulated no other specific, legitimate reason for rejecting Dr. Wali's opinion and giving more weight to Dr. Ijeaku's opinion, whose findings and conclusions were consistent in some respects with those of Dr. Wali. Defendant attempts to fill in the blanks in the ALJ's decision by articulating a rationale for the ALJ's evaluation of the psychiatric opinion evidence, but this court is required "to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r, Soc. Sec. Admin., 554 F.3d 1219, 1225 (9th Cir. 2009). Therefore, the ALJ committed legal error in weighing the psychiatric medical opinion evidence.

**Dr. Dimmick**

In finding that plaintiff retains the RFC for a restricted range of light work, the ALJ rejected the

August 2014 opinion of a workers' compensation internal medicine Agreed Medical Examiner, Jens Dimmick, M.D., except that the ALJ credited Dr. Dimmick's conclusion that plaintiff could sit for six hours in an eight-hour day. The ALJ otherwise rejected Dr. Dimmick's functional assessment and gave "significant weight" to the April 2013 opinion of the Commissioner's consultative examining internist, Bryan To, M.D. The ALJ did not, however, accept Dr. To's opinion that plaintiff could perform medium work; instead, the ALJ found that plaintiff could perform a range of light work. [AR 52-53, 668-674, 1000-1013].

The ALJ rejected Dr. Dimmick's opinion because it was "inconsistent with the objective evidence and the medical record as a whole. [Dr. Dimmick's] own examination of the claimant revealed unremarkable findings." [AR 53]. The ALJ said that he gave weight to Dr. To's opinion because it was "consistent with the medical evidence, including his own objective examination findings." [AR 51].

The ALJ's reasons for rejecting most of Dr. Dimmick's opinion and giving more weight to Dr. To's opinion are not specific and legitimate. Both Dr. Dimmick and Dr. To performed physical examinations that resulted in unremarkable findings. [See AR 52-53, 668-674, 1000-1013]. In addition to performing an examination, however, Dr. Dimmick reviewed and summarized extensive treatment records from 2012 through April 2014, including laboratory test results that were positive for RA factor and for signs of Sjogren's syndrome, ultrasounds, x-rays, surgical reports, and treating specialists' reports. [See AR 1005-1009]. Dr. To examined plaintiff a year before Dr. Dimmick and did not review any of plaintiff's voluminous medical records. [AR 672]. Moreover, by restricting plaintiff's RFC to a reduced range of light work, the ALJ effectively acknowledged that Dr. To's opinion was inconsistent with the record as a whole. Under these circumstances, the ALJ erred in failing properly to apply the relevant factors to weigh the conflicting examining source opinions. See 20 C.F.R. §§ 404.1527(c), 416.927(c).

///
///
///

**Remedy**

A district court may "revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing[.]" Treichler v. Comm'r of Soc., Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014) (quotomg 42 U.S.C. § 405(g)). As the Ninth Circuit has explained, however,

> the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. Our case law precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met. The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved. In conducting this review, the district court must consider whether there are inconsistencies between the claimant's testimony and the medical evidence in the record, or whether the government has pointed to evidence in the record that the ALJ overlooked and explained how that evidence casts into serious doubt the claimant's claim to be disabled. Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits.

Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) (internal quotation marks, citations, and brackets omitted).

Those "rare circumstances" compelling a remand for an award of benefits are not present. The ALJ committed reversible legal error in evaluating the medical opinion evidence. However, the record is not free from conflicts and ambiguities within and between the medical opinion evidence and plaintiff's testimony, which the ALJ found less than fully credible (a finding that plaintiff does not challenge). [See AR 54-55]. Therefore, all essential factual issues have not been resolved, and a remand for further administrative proceedings is the appropriate remedy. See Agnew-Currie v. Colvin, 579 F. App'x 578, 579 (9th Cir. 2014). ("There may be evidence in the record to which the [Commissioner] can point to provide the requisite specific and legitimate reasons for disregarding the testimony of [the claimant's] treating physician. Then again, there may not be. In any event, the [Commissioner] is in a better position than this court to perform

this task.") (quoting <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989)).

On remand, the Commissioner shall direct the ALJ to conduct a supplemental hearing, fully and fairly develop the record, reevaluate the record as a whole, and to issue a new decision containing appropriate findings.

**Conclusion**

For the reasons stated above, the Commissioner's decision is **reversed**, and this case is **remanded** to the Commissioner for further administrative proceedings consistent with this memorandum of decision.

**IT IS SO ORDERED.**

August 22, 2017

_____
ANDREW J. WISTRICH
United States Magistrate Judge